# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Andover Homeowners' :
Association, Inc. of the Sunoco Pipeline :
L.P. Zoning, Building and Electrical :
Permit Approval by the Zoning Hearing :
Board of Thornbury Township, :
Delaware County :
                                : No. 1214 C.D. 2018
Appeal of: Andover Homeowners' : Argued: June 3, 2019
Association, Inc. :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT             FILED: August 26, 2019

Andover Homeowners' Association, Inc. (Association) appeals two orders issued by the Court of Common Pleas of Delaware County (trial court) that affirmed the decisions of the Zoning Hearing Board of Thornbury Township (Zoning Board) to grant permits to Sunoco Logistics and Sunoco Pipeline, L.P. (collectively, Sunoco) to allow construction of the Mariner East 2 Pipeline project in Thornbury Township. Upon review of the Association's contentions, we affirm.

## Background

The Association owns a common area in a planned community known as the Andover Community, which is located at 190 Middletown Road in Thornbury Township's R-1 Residential District. The community's developer set aside this common area to comply with a provision in the Township Zoning Ordinance[1] that required 40 percent of a cluster development to be maintained as open space. In

---

[1] THORNBURY TOWNSHIP MUNICIPAL CODE, Chapter 27, *as amended*, added by Ordinance No. 2-1976, February 3, 1976.

1963 and 1990, the Association's predecessor in interest granted easements to Sunoco for the location of two pipelines across what is now the common area. Neither the easement document nor the property subdivision plan contains a metes and bounds description of the location of the pipelines.

On May 18, 2016, Sunoco filed a declaration of taking to condemn land for (1) a 2.2-acre permanent pipeline easement, (2) a 1.09-acre temporary workspace easement, (3) a 0.23-acre additional temporary workspace easement, (4) a 0.06-acre permanent access road, (5) a 0.72-acre permanent block valve easement, and (6) a 0.08-acre fenced-in site over the property for purposes of constructing, operating, and maintaining two pipelines for the Mariner East 2 Pipeline project. The Association filed preliminary objections to the declaration, which the trial court overruled on September 26, 2016. This Court affirmed the trial court's decision in *In re Condemnation by Sunoco Pipeline L.P.* (Pa. Cmwlth., No. 1780 C.D. 2016, filed October 24, 2017) (unreported).

### A. Zoning, Building and Electrical Permits

In February 2017, Sunoco applied to the Township for zoning, building, and electrical permits for the installation of a five-foot-high fence, utility pole, and automated pipeline monitor equipment, all in the Andover Community's common area. The Township issued the permits. The Association appealed to the Zoning Board arguing, *inter alia*, that Sunoco's work was being performed outside Sunoco's easement.[2] The Zoning Board consolidated the appeals.

---

[2] The Association also argued that the Township's grant of the permits and Sunoco's construction under those permits would cause the Association to violate the Zoning Ordinance by reducing the open space in the Andover Community below the minimum required amount. This is not an issue before this Court.

2

At the hearing on May 1, 2017, the Township manager and zoning officer, Jeffrey Seagraves, testified that he issued the zoning permit with the condition that the easement "be marked by a licensed surveyor" for purposes of "mak[ing] sure that the fence and the work that [Sunoco was] proposing was within that existing easement." Notes of Testimony, 5/1/2017, at 10 (N.T.___); Reproduced Record at 265a (R.R. ___). A copy of the zoning permit, which was admitted into the record, stated that the "boundary of the existing easement must be verified prior to the installation of new fence." R.R. 15a. The Township also presented photographs showing that Sunoco staked out the easement area where the proposed construction was to occur. Seagraves testified that he inspected the area and took these photographs.

Seagraves testified that he supervised the review of the building and electrical permits. The Township's building code officer inspected the area where the well monitoring equipment was to be placed, including the posts and footers supporting the equipment, and determined that the footers were in the proper position. Inspectors with "electrical qualifications" issued the electrical permit. N.T. 15; R.R. 270a.

On cross-examination, Seagraves admitted that the zoning permit was not based upon "as-built drawings [demonstrating] where the actual work was done and the scale [to] be used"; nor was there a "land surveyor stamp" confirming that Sunoco's proposed construction would take place within the existing easement. N.T. 18; R.R. 273a. As to the electrical permit, Seagraves believed that the utility pole would be installed "within the right of way," but he was unsure about the wire. N.T. 25; R.R. 280a. Nevertheless, Seagraves explained to the Board:

> [Board]: When [Sunoco] made the application, was the plan included in the application?

3

[Seagraves]: There have been multiple plans that have come through … so I wanted to make sure we had clarification that this was in fact on the existing easement. It dates back to 1963. And then the valve contract from between [the Association's predecessor in interest] and Sunoco, it was done in 1990. If it's 10 feet – *basically the easement states … that it's 10 feet off of a pipeline*.

[Board]: On both sides?

[Seagraves]: *Well, there's two pipes. So it's – and – the only place where I know where the pipes are is where they come out of the ground, and that's at the valve station. And that's what I wanted to be ensured of, that they were within that.*

N.T. 31-32; R.R. 286a-87a (emphasis added).

The Association presented the testimony of John Mullin, a licensed professional engineer, who had prepared the subdivision plan for the Andover Community. Mullin testified that the existing pipelines "were approximately 23 feet wide," and "run from one side to the other side." N.T. 36; R.R. 291a. Mullin agreed that the easement extended 10 feet "off of the existing pipes." *Id.* When the Andover Community was subdivided, Sunoco "marked out the plans[,] located [the pipes]," and determined their width. *Id.* As to Sunoco's proposed construction under the permits, Mullin testified:

[Counsel]: Did you see the fence was in the easement?

[Mullin]: I had a surveyor go out and locate the fence and, you know, prepare a plan showing the – where the fence was in relationship to the existing easement. Based on that plan, it looked like it was maybe a couple feet off of where the easement is shown on the subdivision plan.

* * *

[Counsel]: Where do you understand the [utility] pole to be in relation to the easement?

4

[Mullin]: It looked like that was outside of the easement.

[Counsel]: And what do you understand about how the electrical line between the [utility] pole and the electrical panel was located with regard to the easement?

[Mullin]: Part of it would have been outside the easement, part of it inside the existing easement.

N.T. 39-40; R.R. 294a-95a.

On cross-examination, Mullin acknowledged that neither the subdivision plan nor the recorded easement contained a metes and bounds description. He acknowledged the best way to locate the pipes is "to go look at them" at the valve station, as Seagraves did:

[Counsel]: So rather than comparing the fence to a subdivision plan, you could have looked at where the pipes were and took a tape measure and measured it to see whether or not those – that new fence was going to be within the existing easement. Wouldn't you agree with that?

[Mullin]: Yes.

N.T. 48-49; R.R. 303a-04a. Mullin further testified about his knowledge of the easement:

[Board]: Are you familiar with the easement? Like did you read the easement when you did the [subdivision] plan to set the boundaries on the plan?

[Mullin]: I had a surveyor set the boundaries on the plan.

[Board]: Is the easement like most easements, that it's an easement from the center line of the pipe out?

[Mullin]: Yes.

5

[Board]: Is this how it works? So did you dig up the pipe to accurately locate it so you know exactly where it was when you did the plan?

[Mullin]: No…. Sunoco had located it and it was placed on the [subdivision plan].

N.T. 54-55; R.R. 309a-10a.

Eric Friedman, the president of the Association, testified that the utility pole and fence appeared to be outside the easement. He stated:

[Counsel]: How did you base that conclusion?

[Friedman]: [T]o be frank, I don't know for sure. But I don't think the approver [of] the permit, knew for sure either. My judgment is based on where the fence was before, and a comparison to the width of the easement as it was used to calculate that 40 percent in Andover [Community].

N.T. 56-57; R.R. 311a-12a.

The Zoning Board denied the Association's appeals and found that Sunoco's work was being done within its easement. Sunoco had staked out the proposed work area, as was confirmed by the Township's photographs. The Zoning Board discredited Mullin's testimony, finding it "equivocal" and not offered within "a reasonable degree of engineering certainty." Board Decision, 6/5/2017, at 10; R.R. 32a. The Zoning Board held that the Association failed to meet its burden to show that the zoning, building and electrical permits had been improperly granted.

### B. Grading Permit

On June 21, 2017, the Township issued Sunoco a permit to grade its easement with the following ten conditions:

1. Sound [p]rotection through the use of sound barriers, sound curtains, or the like, shall be provided for nearby residences and businesses. Such sound protection shall also be provided to

6

residences that will lose sound buffering to [State Route (SR)] 352 traffic during the absence of their existing landscape buffer berms.

2.    Restoration of the Andover landscaping berm along SR 352 shall be required in accordance with the approved Andover Landscaping Plan, with alternate tree species, only as approved by the Township.  The [Association] has requested coordination in the landscaping placement and species types, particularly in the area of the new Block Valve Site.  An appropriate security, escrow, or bond agreement shall be put into place with the Township to guarantee replacement of the Andover Landscaping Berm, subject to approval of the Township Solicitor.

3.    Protection of nearby Septic Systems and Wells, during and after construction including pre & post testing shall be required, as applicable by local, state and federal regulations.

4.    Protection of nearby residences and businesses from construction lighting shall be required.

*5.    Sunoco shall be required to follow PA [Department of Environmental Protection (DEP)] permit requirements when handling contaminated soils as noted in [Erosion and Sedimentation (E&S)] Permit No ESG 01 000 15 001.*

6.    It shall be unlawful for any person, copartnership, firm or corporation to construct, build, renovate or perform any type of construction activity which emits any light, sound or noise whatsoever, excepting in an emergency situation, between the hours of 9:00 p.m. and 7:00 a.m., Monday [t]hrough Saturday, prevailing time.  No work is permitted on Sundays.  Any exception to the above referenced working hours shall require prior written approval by the Township.

7.    A Stormwater Management O&M Agreement shall be executed for the maintenance of the newly proposed stormwater facilities prior to start of construction.

8.    A copy of Sunoco's Approved PPC (Pollution Prevention Control) Plan, as required in E&S Permit No ESG 01 000 15 001, shall be provided for Township records.   Notice of any

7

unforeseen problems encountered during construction should be sent to the Township in addition to the governing authority.

9.  All applicable permits, including third party permits, from local, state, and federal agencies shall be submitted to the Township for their records prior to start of work.

10.  Sunoco shall provide any necessary training, and facilitate any necessary clearances, which may be required to allow access into the proposed work zone for Township related inspections.

R.R. 21a (emphasis added).

The Association appealed the grading permit, arguing that it violated a 100-meter setback requirement set forth in Section 1511(b)(1)(i) of the Business Corporation Law of 1988 (Business Corporation Law),[3] 15 Pa. C.S. §1511(b)(1)(i).[4] The Zoning Board held hearings on October 2, October 16, and November 6, 2017. During the hearings, the Association further claimed that the Township had failed to consider the prior use of the property as an apple orchard, which resulted in the presence of arsenic in the soil. Thus, the Township's grading permit also violated the Township's trusteeship duties under Article I, Section 27 of the Pennsylvania Constitution (the Environmental Rights Amendment) to protect the environmental, natural and historic resources of the Commonwealth. PA. CONST. art. I, §27.

The Township presented the testimony of Michael Ciocco, an engineer, who recommended the issuance of the grading permit with its conditions. Ciocco

---

[3] 15 Pa. C.S. §§1101-4162.

[4] The Association also argued that the Township's grant of the grading permit and Sunoco's construction under the permit would cause the Association to violate the Zoning Ordinance by reducing the open space in the Andover Community below the minimum required amount. The Association further argued that the grading permit violated Section 22-605 of the Township Subdivision and Land Development Ordinance, which prohibits construction of a pipeline within 75 feet of a building. THORNBURY TOWNSHIP MUNICIPAL CODE, Chapter 22, *as amended*, added by Ordinance No. 2-2000, April 5, 2000. These are not issues before this Court.

testified that, in reviewing Sunoco's grading permit, he considered the use of the property as an orchard and conferred with the conservation district, which "works hand in hand" with DEP "mostly [in] erosion controls," such as "dust and mud leaving the site and displacement of sediment[.]" N.T., 10/2/2017, at 40; R.R. 405b. DEP issued Sunoco an E&S permit in advance of the grading permit;[5] thus, Ciocco did not review the reports that DEP considered. When the Andover Community was developed, DEP required dilution of the arsenic levels by "blend[ing] the soil to certain depths below the ground surface" before allowing it to be developed for residential use. N.T. 15; R.R. 380b. The Township was not involved in DEP's remediation plan. Ciocco testified he also reviewed the Township Soil Erosion, Sedimentation and Grading Control Ordinance (Grading Ordinance)[6] and the Township Stormwater Management Ordinance.[7] He deferred to the Township zoning officer on any zoning issues.

Mullin, the Association's expert witness, testified that Sunoco's placement of the pipeline would violate the requirement that utility lines be placed 100 meters from a house or its curtilage. 15 Pa. C.S. §1511(b)(1)(i). He further testified that disturbing the soil in the easement area would cause environmental degradation. In support, the Association offered into evidence a 2005 report that

---

[5] The E&S permit is published on the DEP website, DEPARTMENT OF ENVIRONMENTAL PROTECTION, PENNSYLVANIA PIPELINE PORTAL, MARINER EAST II, *Approved Chapter 105, Water Obstruction and Encroachment Permits and Chapter 102, Erosion and Sediment Control (E&S) Permits*, *ESG0100015001-Counties: Delaware and Chester*, https://www.dep.pa.gov/Business/ProgramIntegration/Pennsylvania-Pipeline-Portal/Pages/Mariner-East-II.aspx#Approved (last visited August 23, 2019).

[6] THORNBURY TOWNSHIP MUNICIPAL CODE, Chapter 9, *as amended*, added by Ordinance No. 1-1975, February 24, 1975.

[7] THORNBURY TOWNSHIP MUNICIPAL CODE, Chapter 19, *as amended*, added by Ordinance No. 1-2012, September 19, 2012.

9

indicated the presence of arsenic in the soil. Mullin stated that the developer remediated the soil where the Andover Community homes were built but not, apparently, where Sunoco's easement lies. On cross-examination, Mullin agreed that soils within the easement were "scraped off and placed in an area outside the pipeline easement so they could be blended." N.T. 21; R.R. 521b.

The Zoning Board denied the Association's appeal of the grading permit issued to Sunoco. The Zoning Board concluded that the construction of the pipeline will take place within 100 meters of the curtilage of several residences, but this did not present a zoning issue. Rather, it presented an eminent domain issue. Thus, the Zoning Board rejected The Association's claim that the grant of the grading permit would violate Section 1511(b)(1)(i) of the Business Corporation Law.

Finally, the Zoning Board held that the Township did not violate the Environmental Rights Amendment, which protects public natural resources. The land at issue is privately owned, which distinguished this case from *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 161 A.3d 911 (Pa. 2017), on which the Association relied. However, even assuming the Environmental Rights Amendment was applicable, the Zoning Board concluded that the Township fulfilled its duties as trustee by placing conditions on the grading permit. The Association appealed to the trial court.

## II. Trial Court Decision

In two orders issued on August 14, 2018, the trial court affirmed the Zoning Board's decisions to issue the zoning, building, and electrical permits and the grading permit to Sunoco. The trial court did so without taking additional evidence.

10

In its opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the trial court held that the issues raised by the Association in the instant appeal were barred by collateral estoppel because they had been previously litigated in the eminent domain proceeding, in which this Court affirmed the trial court's decision to overrule the Association's preliminary objections. *In re Condemnation by Sunoco Pipeline L.P.* (Pa. Cmwlth., No. 1780 C.D. 2016, filed October 24, 2017). The trial court affirmed the Zoning Board's holding that the Township did not violate its trusteeship duties under the Environmental Rights Amendment.

### III. Appeal

On appeal,[8] the Association argues that the Zoning Board erred in rejecting its appeals and raises three issues for our consideration. First, it argues that the Zoning Board erred because the Township violated its duties as a trustee under the Environmental Rights Amendment in issuing the grading permit. Second, it argues that the Zoning Board erred because the grading permit violated Section 1511(b)(1)(i) of the Business Corporation Law. Finally, it argues that the Zoning Board erred in upholding the zoning, building and electrical permits because Sunoco did not prove that its proposed construction work was being performed within the easement area. We address these issues *seriatim*.

---

[8] Where the trial court does not accept additional evidence, our review determines whether the zoning board committed an error of law or "a manifest abuse of discretion." *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 639 (Pa. 1983). A zoning board abuses its discretion "only if its findings are not supported by substantial evidence." *Id*. at 640. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

11

## Analysis

## A. Environmental Rights Amendment

The Association argues that the Township violated its duties as a trustee under the Environmental Rights Amendment in issuing the grading permit in spite of the arsenic contamination on the property. The Township improperly relied upon DEP and its permitting process, which did not address the contamination. The Township failed to protect the community from this known harm and failed to protect "historic resources," *i.e.*, a house that could be damaged by Sunoco's project. Association Brief at 22. The Association further contends that it is not collaterally estopped from pursuing this claim[9] because the law in this area was changed dramatically by the Supreme Court's ruling in *Pennsylvania Environmental Defense Foundation*, 161 A.3d 911.

The Zoning Board and Sunoco counter that the Township has no duty to preserve and protect private land under the Environmental Rights Amendment.[10] In any event, the record demonstrates that the Township fulfilled its duties as a trustee by considering the environmental issues when it reviewed the grading permit application. The Association offered no evidence that Sunoco's construction

---

[9] In its appeal of the trial court's decision overruling its preliminary objections to Sunoco's declaration of taking, the Association asserted that no entity was serving as trustee of the Commonwealth's natural resources with respect to the Mariner East 2 Pipeline project. This Court, in affirming the trial court, held that the issue had been waived because the Association did not raise it in its preliminary objections before the trial court. *In re Condemnation by Sunoco Pipeline L.P.*, slip op. at 16.

[10] Alternatively, the Zoning Board and Sunoco argue that the Association did not include the constitutional claim in its notice of appeal to the Zoning Board, and thus, the issue has been waived. A review of the record shows that counsel for the Association raised the constitutional issue for the first time at the May 1, 2017, Zoning Board hearing, to which counsel for Sunoco objected based on "relevance." N.T., 5/1/2017, at 42; R.R. 297a. Because the Zoning Board addressed the Association's constitutional challenge in its decision, we will consider the issue.

activities will cause environmental contamination. The Association could have appealed DEP's issuance of the E&S permit but did not.

> The Environmental Rights Amendment states as follows:
>
> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art. I, §27. In *Pennsylvania Environmental Defense Foundation*, our Supreme Court explained the scope of the Environmental Rights Amendment:

> [The Environmental Rights Amendment] grants two separate rights to the people of this Commonwealth. The first right is contained in the first sentence, which is a prohibitory clause declaring the right of citizens to clean air and pure water, and to the preservation of natural, scenic, historic and esthetic values of the environment. This clause places a limitation on the state's power to act contrary to this right, and while the subject of this right may be amenable to regulation, any laws that unreasonably impair the right are unconstitutional.
>
> *The second right reserved by Section 27, set forth in its second sentence, is the common ownership by the people, including future generations, of Pennsylvania's public natural resources.*
>
> * * *
>
> *The third clause of Section 27 establishes a public trust, pursuant to which the natural resources are the corpus of the trust, the Commonwealth is the trustee, and the people are the named beneficiaries.*

*Pennsylvania Environmental Defense Foundation*, 161 A.3d at 931-32 (citations and footnote omitted) (emphasis added). The trustee's obligations under Article I,

Section 27 "are not vested exclusively in any single branch of Pennsylvania government, and instead *all agencies and entities of the Commonwealth government, both statewide and local*, have a fiduciary duty to act toward the corpus with prudence, loyalty, and impartiality." *Id.* at 931 n.23 (citing *Robinson Township, Washington County v. Commonwealth*, 83 A.3d 901, 956-57 (Pa. 2013)) (emphasis added).

The Zoning Board held that the Andover Community common area is not part of the "corpus of public trust" because it is privately owned. This Court has held that Article I, Section 27 covers

> not only state-owned lands, waterways, and mineral reserves, but also *resources that implicate the public interest, such as ambient air, surface and ground water, wild flora, and fauna (including fish) that are outside the scope of purely private property.*

*Marcellus Shale Coalition v. Department of Environmental Protection*, 193 A.3d 447, 470 (Pa. Cmwlth. 2018) (quoting *Robinson Township*, 83 A.3d at 955) (emphasis added). Stated otherwise, "[t]he concept of public natural resources [is] flexible to capture the full array of resources implicating the public interest, as these may be defined by statute or at common law." *Id.* at 470 (quoting *Robinson Township*, 83 A.3d at 955). Here, the Association contends that Sunoco's construction activities will disturb the contaminated soils, which will be "discharged into stormwater" and "ambient air." Association Brief at 14. "Clean air" and "pure water" are among the values expressly addressed in the first clause of the Environmental Rights Amendment. PA. CONST. art. I, §27.

However, the Association offered no evidence to support its claim that there will be degradation of these natural resources. The 2005 site investigation report indicated arsenic contamination on the property, but it is undisputed that the

14

soil was remediated at the direction of DEP. Mullin acknowledged that the contaminated soils within the easement area were "scraped off and placed in an area outside the pipeline easement so they could be blended." N.T., 10/16/2017, at 21; R.R. 521b. Simply, Mullin's testimony that contaminated soil remained in the easement was not consistent. The Zoning Board did not err in rejecting Mullin's testimony. *Frederick v. Allegheny Township Zoning Hearing Board*, 196 A.3d 677, 690 (Pa. Cmwlth. 2018) ("Testimony that merely speculates on possible harm lacks probative value.").

In any event, we conclude that the Township has fulfilled its obligations under the Environmental Rights Amendment. The Township placed ten conditions on the grading permit, one of which required Sunoco to "follow [DEP] permit requirements when handling contaminated soils as noted in [the E&S] Permit[.]" R.R. 21a. The Association argues that this is not enough; the Township must also take affirmative steps to protect the public from potential arsenic contamination. Association Brief at 21.

This Court considered, and rejected, a similar argument in *Frederick*, 196 A.3d 677. There, the township's zoning ordinance permitted oil and gas development in all zoning districts so long as certain health, safety and welfare standards were met. The zoning ordinance also required operators to satisfy all state and federal permitting requirements. The township issued a "zoning compliance permit" to a gas company to develop an unconventional gas well on property zoned for agricultural and residential uses. Objectors, owners of nearby property, appealed to the zoning board and asserted, *inter alia*, that the township violated the Environmental Rights Amendment. The zoning board denied the objectors' appeal, and the trial court affirmed.

15

On further appeal, this Court affirmed the trial court. In rejecting the objectors' Article I, Section 27 challenge, we stated that "the first clause of Section 27 does not impose express duties on the political branches to enact specific affirmative measures to promote clean air, pure water, and the preservation of the different values of our environment." *Frederick*, 196 A.3d at 694 (quoting *Robinson Township*, 83 A.3d at 951). In other words, Article I, Section 27 does

> not give municipalities the power to act beyond the bounds of their enabling legislation. Municipalities lack the power to replicate the environmental oversight that the General Assembly has conferred upon DEP and other state agencies. Neither *Environmental Defense Foundation* [] nor *Robinson Township* [] has altered these fundamental principles of Pennsylvania's system of state and local governance.

*Frederick*, 196 A.3d at 697. When the government acts, "it must reasonably account for the environmental features of the affected locale." *Id.* at 695. When an objector challenges a governmental action, it must demonstrate, with evidence, that the government acted in derogation of this duty. Because no such evidence was presented in *Frederick*, this Court held that the objectors failed to prove that the township unreasonably impaired their rights under the Environmental Rights Amendment.

In the case *sub judice*, the Township conditioned the grading permit on Sunoco's compliance with the DEP requirements "as noted in [the E&S] Permit[.]" R.R. 21a. The E&S permit required, *inter alia*, that Sunoco implement a preparedness, prevention, and contingency plan for toxic or hazardous materials on site. The permit also provided that Sunoco must implement such plans "at any location of the project site where it knows or has reason to believe that soils are or may be contaminated due to past land uses or receipt of written notification from

16

DEP."[11]  The Township engineer, Ciocco, testified that when reviewing the grading permit, he considered the prior use of the property as an orchard and spoke with the conservation district. He further testified that DEP had tested the soil at the property and determined that it was safe for residential development.  The Zoning Board found Ciocco's testimony both credible and persuasive.

In sum, the record establishes that the Township "reasonably account[ed] for the environmental features" of the property and, thus, satisfied its obligations under the Environmental Rights Amendment.  *Frederick*, 196 A.3d at 694.  The Association's concerns about the potential for environmental harm caused by Sunoco's construction activities should have been addressed to DEP when it issued Sunoco the E&S permit.[12]

The Association also raises an Article I, Section 27 challenge with respect to "historic resources" on the property.  The Zoning Board and Sunoco argue that this issue was not raised before the Zoning Board,  but the Association contends that it was and, in support, cites to the October 2, 2017, hearing transcript. Association Brief at 22.  The cited transcript contains testimony from Andover

---

[11] E&S Permit (No. ESG 01 000 15 001) at 16, Part C-XIII.  DEPARTMENT OF ENVIRONMENTAL PROTECTION, PENNSYLVANIA PIPELINE PORTAL, MARINER EAST II, *Approved Chapter 105, Water Obstruction and Encroachment Permits and Chapter 102, Erosion and Sediment Control (E&S) Permits*, ESG0100015001-Counties: Delaware and Chester, https://www.dep.pa.gov/Business/ProgramIntegration/Pennsylvania-Pipeline-Portal/Pages/Mariner-East-II.aspx#Approved (last visited August 23, 2019).

[12] The DEP's approval letter of February 13, 2017, as attached to the E&S permit, stated that "[a]ny person aggrieved by this action may appeal … to the Environmental Hearing Board."  E&S permit approval letter, 2/13/2017, at 2; DEPARTMENT OF ENVIRONMENTAL PROTECTION, PENNSYLVANIA PIPELINE PORTAL, MARINER EAST II, *Approved Chapter 105, Water Obstruction and Encroachment Permits and Chapter 102, Erosion and Sediment Control (E&S) Permits*, ESG0100015001-Counties: Delaware and Chester, https://www.dep.pa.gov/Business/ProgramIntegration/Pennsylvania-Pipeline-Portal/Pages/Mariner-East-II.aspx#Approved (last visited August 23, 2019).

Community residents complaining about the impact of Sunoco's construction activities on their houses and one statement that two buildings in the Andover Community are historic. This testimony was too conclusory to preserve the constitutional issue, and the Association did not cite the Environmental Rights Amendment in its argument to the Zoning Board. We hold that the Association's constitutional claim with respect to the alleged historic resources has been waived.

**B. Business Corporation Law**

The Association argues that the Township's grant of the grading permit violated the Business Corporation Law, 15 Pa. C.S. §1511(b)(1)(i), which relates to a public utility's eminent domain authority. The Association contends that the Public Utility Code[13] does not preempt the Business Corporation Law, and no public authority has reviewed the pipeline siting for the project at issue. The Zoning Board and Sunoco counter that the Association should have raised its challenge to the location of the pipeline in the eminent domain proceedings and it is too late to do so in this appeal.

Section 1511 of the Business Corporation Law states, in relevant part, as follows:

> (a) General rule.--A public utility corporation shall, in addition to any other power of eminent domain conferred by any other statute, have the right to take, occupy and condemn property for one or more of the following principal purposes and ancillary purposes reasonably necessary or appropriate for the accomplishment of the principal purposes:
>
> * * *
>
> (2) The transportation of artificial or natural gas, electricity, petroleum or petroleum products or

---

[13] 66 Pa. C.S. §§101-3316.

18

water or any combination of such substances for the public.

(3) The production, generation, manufacture, transmission, storage, distribution or furnishing of natural or artificial gas, electricity, steam, air conditioning or refrigerating service or any combination thereof to or for the public.

\* \* \*

(b) Restrictions.--The powers conferred by subsection (a) shall not be exercised:

(1) *To condemn for the purpose of constructing any street railway, trackless-trolley omnibus, petroleum or petroleum products transportation or aerial electric transmission, aerial telephone or aerial telegraph lines:*

(i) Any dwelling house or, except in the case of any condemnation for petroleum or petroleum products transportation lines, *any part of the reasonable curtilage of a dwelling house within 100 meters therefrom and not within the limits of any street*, highway, water or other public way or place.

15 Pa. C.S. §1511 (emphasis added).  Section 1511(a) authorizes a public utility to implement its power of eminent domain and regulates the exercise of that power. The Association asserts that Sunoco's pipeline siting violated the 100-meter setback required by Section 1511(b)(1)(i).  This presents a challenge to Sunoco's exercise of its eminent domain power and, as such, was required to be raised in the condemnation proceeding.  Even so, the grading permit did not determine the

19

location of the pipeline. We affirm the Zoning Board's holding that it lacked jurisdiction over the Section 1511(a) issue.

## C. Right-of-Way

The Association contends that the Zoning Board erred by upholding the grant of the zoning, building, and electrical permits because Sunoco failed to show that the construction work will be performed within its right-of-way. The Zoning Board and Sunoco counter that the Zoning Board's findings were supported by substantial evidence. Seagraves testified to the site inspection he performed and his determination that Sunoco's construction work was being performed within the easement area.

This Court may not substitute its interpretation of the evidence for that of the Zoning Board. *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005). "It is the function of the Zoning Board to weigh the evidence before it." *Id*. The Zoning Board is "the sole judge of the credibility of witnesses and the weight afforded their testimony." *Id*. The Zoning Board is free to reject "even uncontradicted testimony it finds lacking in credibility, including testimony offered by an expert witness." *Id*. We are bound by the Zoning Board's findings "that result from resolutions of credibility and conflicting testimony." *Id.*

Seagraves testified that he requested Sunoco to stake out the proposed work area, and he performed a site inspection to ensure that this was done. Seagraves testified that he went to the valve station, where the pipes "come out of the ground," to ensure the proposed construction "was in fact on the existing easement." N.T., 5/1/2017, at 32; R.R. 287a. Mullin opined that the fence "looked like [] maybe a couple feet off of where the easement [was]." N.T. 39; R.R. 294a. However, he acknowledged that because there was no metes and bounds description of the

20

easement in any of the relevant documents, the best way to locate the pipes was "to go look at them" at the valve station. N.T. 48; R.R. 303a. Seagraves testified that he did just that, and the Zoning Board credited his testimony to find that Sunoco's proposed construction was being done within the easement area. By contrast, the Zoning Board found Mullin's testimony "equivocal" and not offered "to a reasonable degree of engineering certainty." Board Decision, 6/5/2017, at 10; R.R. 32a. The Zoning Board's findings are fully supported by substantial evidence and cannot be disturbed. *Taliaferro*, 873 A.2d at 811.

## IV. Conclusion

Because the Association offered no evidence to support its contention that Sunoco's construction activities will have an adverse environmental impact or that the Township acted unreasonably in issuing the grading permit to Sunoco, we reject its claim under the Environmental Rights Amendment. The Association's contention that the Township violated Section 1511(b) of the Business Corporation Law should have been brought in the condemnation proceeding before the trial court. Finally, the Zoning Board's finding that Sunoco's proposed construction was being performed within the easement area is supported by substantial evidence and may not be disturbed. For these reasons, we affirm the trial court's August 14, 2018, orders.

_____
MARY HANNAH LEAVITT, President Judge

Judge Fizzano Cannon did not participate in the decision in this case.

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Andover Homeowners' :
Association, Inc. of the Sunoco Pipeline :
L.P. Zoning, Building and Electrical :
Permit Approval by the Zoning Hearing :
Board of Thornbury Township, :
Delaware County :
: No. 1214 C.D. 2018
Appeal of: Andover Homeowners' :
Association, Inc. :

**O R D E R**

AND NOW, this 26th day of August, 2019, the orders of the Court of Common Pleas of Delaware County dated August 14, 2018, in the above-captioned matter, are AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge